**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **Giovanni Irizarry and Ashley Irizarry**, Individually and as Parents and Legal Guardians of II and NB, minor children 5060 Wheathill Road East Palestine, Ohio 44413 | ) ) ) ) ) ) |
| and | ) ) |
| **Kristine Murphy** 5060 Wheathill Road East Palestine, Ohio 44413 | ) ) ) ) ) |
| and | ) ) |
| **Irizarry Property Solutions, LLC** 5060 Wheathill Road East Palestine, Ohio 44413 | ) ) ) ) |
| and | ) ) |
| **Empire Productions, LLC** 2476 W Manor Avenue Poland, Ohio 44514 | ) ) ) ) ) |
| and | ) ) |
| **G and N Like Father Like Son Lawn Care, LLC** 2476 W Manor Avenue Poland, Ohio 44514 | ) ) ) ) ) |
| On behalf of themselves and all others similarly situated. | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |

Case No.:

Judge:

**INDIVIDUAL AND CLASS ACTION
COMPLAINT WITH JURY TRIAL
DEMAND ENDORSED HEREON**

Zachary J. Murry (0087421)
BARKAN & ROBON, LTD.
1701 Woodlands Drive
Suite 100
Maumee, Ohio 43537
Phone:  (419) 897-6500
Fax:    (419) 897-6200
zmurry@barkan-robon.com

Wesley D. Merillat (0080253)
CHARLES E. BOYK LAW OFFICES, LLC.
1500 Timberwolf Drive
Holland, Ohio 43528
Phone: 419-241-1395
Fax: 419-241-8731
wmerillat@charlesboyk-law.com

*Attorneys for Plaintiffs*

**Norfolk Southern Corporation**                          )
1200 Peachtree Street, NE                                 )
Atlanta, Georgia 30308                                    )
*Serve*:  J. Steven Stewart                               )
          557 Mulberry Street, Suite 1500                 )
          Macon, Georgia 30308                            )
                                                          )
and                                                       )
                                                          )
**Norfolk Southern Railway Company**                      )
1200 Peachtree Street, NE                                 )
Atlanta, Georgia 30308.                                   )
*Serve*:  Corporation Service Company                     )
          3366 Riverside Drive, Suite 103                 )
          Upper Arlington, Ohio 43221                     )
                                                          )
          Defendants.                                     )
                                                          /

_____

Now come Plaintiffs Giovanni Irizarry and Ashley Irizarry, Kristine Murphy, Irizarry Property Solutions, LLC., Empire Productions, LLC., and G and N Like Father Like Son Lawn Care, LLC., and all others similarly situated, by and through undersigned counsel, and for their Complaint against the Defendant, hereby state and aver as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs Giovanni Irizarry and Ashley Irizarry, Kristine Murphy, Irizarry Property Solutions, LLC., Empire Productions, LLC., G and N Like Father Like Son Lawn Care, LLC., ("Plaintiffs") individually and on behalf of a putative class of all others similarly situated ("Class"), bring this action seeking common law relief as well as seeking vindication for a violation of their respective constitutional rights arising from the Defendants' Toxic Derailment Event ("TDE") that occurred in East Palestine, Ohio, on February 3, 2023. Particularly, Plaintiffs state that the conduct of Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company, has constituted a shocking and continuing violation of the Plaintiffs'

2

fundamental rights under the Fifth Amendment to the United States Constitution. As discussed herein, pursuant to the broad eminent domain authority afforded Defendants, Defendants have taken Plaintiffs' respective properties without payment of just compensation.

## PARTIES

2.      At all relevant times, Plaintiffs Giovanni Irizarry and Ashley Irizarry, were residents of the Village of East Palestine, Columbiana County, Ohio. In addition, at all relevant times herein alleged Plaintiffs Giovanni Irizarry and Ashley Thornsbury were the parents and legal guardians of II and NB, minor children. Plaintiffs reside at the property located at 5060 Wheathill Road, East Palestine, Ohio 44413.

3.      In addition to the property serving as their personal residence, Plaintiffs also own multiple parcels of real property located within twenty (20) miles of the TDE described herein. These parcels are more particularly identified as follows:

    a.  Columbiana County

        i.  1 8 36 NW PT NW ¼ 124.70' TR 1804 0.471AC; ppn. 67-02341.000

    b.  Mahoning County

        i.  LOT 1202 50 X 136 MCCLURE; ppn. 38-010-0-191.00-0

        ii.  LOT 89 70 X 280 GREATER YO MANOR PLAT 2; ppn. 39-001-0-045.00-0.

        iii.  LOT 793 50 X 150 SECOND; ppn. 38-006-0-109.00-0

        iv.  LOT 1940 40 X 140 GORDON; ppn. 46-007-0-579.00-0

        v.  LOT 21156 EAST PART 38 X 46 CONNECTICUT; ppn. 53-172-0-248.00-0

        vi.  LOT 21155 EAST PART 40 X 38 BROCKWAY; ppn. 53-172-0-250.00-0

4.      At all relevant times, Plaintiff Kristine Murphy was a resident of the Village of East Palestine, Columbiana County, Ohio. Plaintiff resides at the property located at 5060 Wheathill Road, East Palestine, OH 44413.

5.      At all relevant times, Plaintiff Irizarry Property Solutions, LLC., (hereinafter "IPS") was a limited liability company formed and organized under the laws of the State of Ohio with its principal place of in East Palestine, Ohio. At all times the business of Plaintiff IPS was the acquisition, remodeling and repairing, leasing, and selling of real property in and around East Palestine, Ohio and within twenty (20) miles of the TDE described herein.

6.      Plaintiff IPS currently owns the a parcel of real property within twenty (20) miles of the TDE. The property is legally described as follows: LOT 373 50 F IRR POLAND; ppn. 38-008-0-211.00.

7.      At all relevant times, Plaintiff Empire Productions, LLC., (hereinafter "EP") was a real estate company formed and organized under the laws of the State of Ohio with a principal place of business in Poland, Ohio 44514. At all times the business of Plaintiff EP was the acquisition, remodeling and repairing, leasing, and selling of real property in and around East Palestine, Ohio and within twenty (20) miles of the TDE described herein.

8.      Plaintiff EP owns the following parcels of real property within twenty (20) miles of the TDE:

    a.   Columbiana County

        i.   LOT #589 TAGGART 5th 55'X150'; ppn. 68-00923.000

        ii.  ROGERS 63 HALLS 60.6; ppn. 47-00227.000

    b.   Mahoning County

        i.   LOT 953 10 X 156 WILSON; ppn. 46-002-0-093.00-0

   ii. LOT 953 70 X 156 WILSON; ppn. 46-002-0-094.00-0

  9. At all relevant times, Plaintiff G and N Like Father Like Son Lawn Care, LLC.,
(hereinafter "G&N") is an Ohio lawn care company formed and organized under the laws of the
State of Ohio with a principal place of business in Poland, Ohio 44514. At all times Plaintiff
G&N performed lawn care, pressure washing, and handyman services for real property in and
around East Palestine, Ohio and within twenty (20) miles of the TDE described herein.

  10. Defendant Norfolk Southern Corporation (hereinafter "NS") is a national freight
transportation company with its principal place of business located at 1200 Peachtree Street, NE,
Atlanta, Georgia 30308, that has been formed and organized under the laws of the State of
Virginia. NSC is a publicly traded entity. Upon information and belief, NS and its subsidiaries
operate as one half of a duopoly of all freight rail service in the eastern half of the United States.
Upon further information and belief Defendant NS has a current market capitalization in excess
of $52 Billion.

  11. Defendant Norfolk Southern Railway Corporation (hereinafter "NSR") is a
wholly owned subsidiary of Defendant NS. Defendant NSR is incorporated under the laws of the
state of Georgia.

  12. Defendants NS and NSR shall be referred to herein individually by name or
jointly as "Defendants."

  13. At all times alleged herein, Defendants include and included any and all parents,
subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of
any kind, their predecessors, successors and assigns and their officers, directors, employees,
agents, representatives and any and all other persons acting on their behalf.

14.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator, and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

15.     At all relevant tines herein alleged, Defendants owned and operated a Class I freight railroad that passes through the town of East Palestine, Ohio.

16.     By virtue of its status as a Class I railroad, at all times relevant herein, Defendants have enjoyed broad eminent domain power under specific authorization granted them by the Ohio Revised Code, and its precursors. Specifically, OH Rev. C. § R.C. 4961.13 states that:

> A railroad company, domestic or foreign, or municipal corporation which owns or operates a railroad may enter upon any land for the purpose of examining and surveying its railroad line, and may appropriate so much of such land as is necessary for its railroad . . .

*Id*.

17.     Defendants have additional statutory eminent domain authority pursuant to OH Rev. C. §§ 4955.01, 4955.02, and 4961.16. Indeed, Defendants' eminent domain authority is so broad they may even appropriate land owned by an Ohio municipal corporation.

18.     At all times herein, Defendants acted under, and availed themselves of, the color of Ohio law in the operation of their business, which included but was not limited to the identification and acquisition of real and personal property necessary for the construction, maintenance, and operation of the Defendants' railroad.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and also pursuant to 28 U.S.C. §1332, as Plaintiffs' Complaint raises federal questions and complete diversity exists between the Parties.

20.     Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. §1391, as the events giving rise to the Plaintiffs' claims occurred within this district and the property which is the subject of this dispute is located within the territorial confines of the Northern District.

## GENERAL FACTUAL ALLEGATIONS COMMON TO ALL PLAINTIFFS

**I.     The Derailment and Defendant's 'Controlled Release'**

21.     On Friday, February 3, 2023, Norfolk Southern Freight Train 32N, traveling from Madison, Illinois, to Conway, Pennsylvania and transporting multiple cars of ultrahazardous chemicals, derailed in downtown East Palestine, Ohio. This Toxic Derailment Event ("TDE") caused widespread fear, panic, and a public health and environmental disaster that is currently ongoing and developing.

22.     In the immediate aftermath of the TDE, on February 4, 2023, the Village of East Palestine declared a state of emergency and issued evacuation orders as the derailed trains continued to burn and, upon information and belief, discharge the ultrahazardous chemicals contained thereon.

23.     The evacuation order was reaffirmed on February 5, 2023, with Gov. Mike DeWine issuing an "urgent evacuation notice." At that time, all residents residing within one (1) mile of the derailment site was ordered, under threat of detention, to evacuate.

24.     The situation continued to deteriorate at the derailment site and, on February 6, 2023, Defendants made the determination that a 'controlled release' of the hazardous chemical vinyl chloride from the derailed and damaged tanker cars was necessary to prevent a catastrophic failure of the tankers, which Defendants feared would result in a large explosion and the spreading of deadly shrapnel over an undetermined area.

25.     This intentional 'controlled release' created a billowing plume of thick black smoke which distributed toxic hydrogen chloride and phosphene gas into the atmosphere. Upon information and belief, the chemicals disbursed by the Defendants 'controlled release' traveled over twenty (20) miles, effecting air quality throughout the area and further terrifying effected residents, like the Plaintiffs, who were sheltering in place miles from the derailment site. The 'controlled release' also spewed ash and other visible particulates into the air, covering properties miles away from the derailment site in ash and other debris.

26.     The evacuation order was officially lifted on February 8, 2023, with Defendants and government officials encouraging residents, inclusive of the Plaintiffs, to "return home." Plaintiffs and others were informed that it was safe for them to return to their homes.

27.     It was not safe for Plaintiffs and others to return to their homes. On February 11, 2023, Plaintiffs and others were informed that the water supply serving their homes and businesses was at risk and that there was ongoing risk of environmental contamination.

28.     The derailment giving rise to the TDE described herein consisted of approximately fifty-one (51) cars. Of these, eleven (11) were identified as carrying hazardous and contaminating chemicals including, but are not limited to, vinyl chloride, butyl acrylate, ethylene glycol monobutyl ether, isobutylene, benzene, butyl acrylate, phosgene, and hydrogen chloride.

29.     Each of these hazardous chemicals was released as a consequence of the TDE and the conduct of the Defendants as described herein. Upon information and belief, the release of these chemicals has resulted in the contamination of ground and surface water as well as soil and infrastructure. Further, the release of these chemicals into the community, the negative

health effects of which are well-studied, has effectively stigmatized the properties owned by the Plaintiffs, destroying their fair market value.

30.     The U.S. Environmental Protection Agency ("EPA") has identified significant health risks associated with exposure to the chemicals to which Plaintiffs and others in the community have been---and continue to be---exposed to by virtue of the Defendants' conduct. These negative health consequences, which include death and serious impairment are as follows:

a.  Vinyl Chloride: Exposure to vinyl chloride can cause dizziness or sleepiness, fainting, respiratory difficulty, and death. Chronic or repeated exposure can result in changes in the structure of the liver and liver cancer. It is also a skin irritant, causing numbness and blistering. The U.S. Department of Health and Human Services (DHHS), the International Agency for Research or Cancer (IARC), and the EPA have all designated Vinyl chloride as a known human carcinogen.

b.  Ethylene Glycol Monobutyl Ether: Exposure to ethylene glycol monobutyl ether can irritate the nose and throat. It can also cause nausea, vomiting, diarrhea, and abdominal pain. Exposure can cause headache, dizziness, lightheadedness, and passing out. It may damage the liver and kidneys.

c.  Isobutylene: Exposure to isobutylene can cause irritation of eyes, nose, and throat, frostbite, headache, dizziness, lightheadedness, and fatigue. Repeated exposure can cause coma and death. Chronic health hazards include cancer, reproductive failure, and other long term health effects.

d.  Benzene: Benzene is a known human carcinogen according to DHHS, the IARC, and the EPA. Exposure to benzene can result in drowsiness, dizziness, rapid heart rate, headaches, tremors, confusion, unconsciousness, vomiting, irritation of the stomach, dizziness, sleepiness, convulsions, rapid heart rate, and death. Repeated exposure can cause harmful effects on the bone marrow, a decrease in red blood cells leading to anemia, excessive bleeding and decrease the size of ovaries in women.

e.  Butyl Acrylate: Exposure to butyl acrylate can irritate the nose, throat, and lungs, can cause headache, dizziness, nausea, and vomiting. Repeated exposure can lead to permanent lung damage.

f.  Phosgene: Exposure to phosgene can cause eye and throat irritation, chemical burns, and frostbite. Repeated exposure can cause severe lung damage and to death.

g.  Hydrogen Chloride: Exposure to hydrogen chloride causes throat irritation, rapid breathing, narrowing of the bronchioles, blue coloring of the skin, accumulation of fluid in the lungs, and even death. Repeated exposure can cause swelling and spasm of the throat and suffocation, respiratory problems, eye and skin irritation, discoloration of the teeth, and severe corrosive injury to the lips, mouth, throat, esophagus, and stomach.

## II.    The EPA Steps In

31.    On or about February 18, 2023, in response to repeated requests from residents and local officials, the EPA actively began to involve itself in the TDE and the Defendants' response thereto.

32.    Upon engagement with the TDE, the EPA and the Ohio EPA began to actively monitor air in and around East Palestine. In addition, federal and state officials began discussions regarding testing for the presence of dioxins in and around the TDE.

33.    Dioxins are highly toxic pollutants, byproducts of industrial processes that use or burn chlorine, that are linked to a host of severe long term health outcomes. These negative health effects associated to dioxin exposure, which is an identified carcinogen, include, but are not limited to cancer, reproductive damage, type 2 diabetes, ischemic heart disease, and infertility in adults.

34.    On February 21, 2023, the EPA issued a Unilateral Administrative Order for Removal Actions at CERCLA Docket No. V-W-23-C-004. A copy of this Order is filed herewith, and incorporated herein by reference, as Exhibit 1.

35.    Pursuant to that Order, the EPA has identified that the derailment site and its surrounding environs constitute a "facility" as defined by Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

36.     The EPA has also concluded that Defendants is/are the "owner" and/or "operator" of the facility pursuant to 42 U.S.C. § 9601(20) and 42 U.S.C. § 9607(a)(1). Further, Defendants is/are the "owner" and/or "operator" of the facility at the time of disposal of hazardous substances at the facility pursuant to 42 U.S.C. § 9601(20), and 42 U.S.C. § 9607(a)(2).

37.     As a consequence of this designation, Defendants are responsible for the maintenance, remediation, and restoration of the property to conformity with the EPA's directives.

38.     As a consequence of this Order, Defendants, and each of them, have and will continue to exert control and ownership over the TDE site and the surrounding areas, inclusive of real property owned by the Plaintiffs.

39.     The contaminants vinyl chloride, benzene, and butyl acrylate found at and around the TDE site are each a "hazardous substance" that present ongoing, imminent and substantial danger to public health or welfare, inclusive of the Plaintiffs and the putative Plaintiff class(es).

40.     The EPA has further determined that the TDE and surrounding environs constitute an imminent threat to public health, welfare, and the environment, based upon an ongoing risk of:

    a.  actual or potential exposure to nearby human populations, animals, or the food chain from hazardous substances and pollutants or contaminants;

    b.  actual or potential contamination of drinking water supplies or sensitive ecosystems;

    c.  hazardous substances and pollutants or contaminants in drums, barrels, tanks, or other bulk storage containers, that may pose a threat of release; and

    d.  high levels of hazardous substances and pollutants or contaminants in soils largely at or near the surface, that may migrate.

### III.    The Plaintiffs' Injuries

41.    Plaintiffs collectively own numerous parcels of real property locate within twenty (20) miles of the TDE site.

42.    Plaintiffs have had their property rights permanently impaired by the conduct of the Defendants.

43.    Plaintiffs have and will continue to suffer loss of use of their real property and the destruction of its fair market value; property which has been taken by the Defendants without payment of just compensation.

44.    In addition to the loss of their real property, Plaintiffs have also suffered the catastrophic taking of their personal property---including but not limited to their respective businesses---by virtue of the ongoing contamination, stigmatization, and destruction of the twenty (20) mile area surrounding the Defendants TDE site.

45.    Plaintiffs Giovanni Irizarry and Ashley Thornsbury, as well as their minor children and Plaintiff Kristine Murphy were forced to evacuate from their home near the TDE.

46.    They were required to shelter in place at a property further away, but still within twenty (20) miles of the TDE.

47.    During the Defendants' 'controlled release' Plaintiffs smelled chemicals in the air they were breathing for an extended period and observed smoke, ash, and visible particulate in the air.

48.    Plaintiffs have and continue to suffer from skin and respiratory irritation for which they have sought medical treatment and monitoring.

49.     Moreover, out of concern for the health of Plaintiff Kristine Murphy, Plaintiffs have been forced to relocate her away from the TDE and the site of Defendants misconduct out of concern for her health.

50.     Plaintiffs have also dealt with ongoing fear and anxiety arising directly and proximately from the tortious misconduct of the Defendants, the loss of their property, and livelihoods. This fear, anxiety and emotional distress has also manifested in the minor children and is continuing in nature.

51.     As a direct and proximate result of the Defendants' tortious disregard for Plaintiffs' constitutional property rights, Plaintiffs have suffered catastrophic damages to their respective persons, property, and livelihoods. Defendants constitutionally tortious misconduct has impaired Plaintiffs respective lives, liberty, and property---each leg of the stool comprising our fundamental freedoms as citizens.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs collectively hereby incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

53.     Plaintiffs bring this action as a class action under Rules 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all members of a Class(es) defined as follows:

Class 1:
All property owners located within a twenty (20) mile radius of the TDE site.

Class 2:
All persons living within a twenty (20) mile radius of the TDE site who have been harmed or placed at unreasonable likelihood of future harm to their persons as a result of exposure to the TDE.[1]

---

[1] Plaintiffs reserve the right to amend the Class definition based on information learned in discovery.

54.     Plaintiffs seek class-wide declaratory declaration and vindication of their constitutional rights, as well as monetary, and other relief under Rule 23(b)(1-3).

55.     Defendants have acted or refused to act on grounds generally applicable to the entire Class.

56.     The number of existing Class members is substantial. Upon information and belief, at the time of filing the Complaint, the number of existing Class members is believed to be in excess of 1000 individuals. The current number of Class members is readily ascertainable through appropriate discovery, although the number of potential future Class members is indeterminable.

57.     Because the number of present and future Class members is numerous, joinder of individual cases would not be reasonable, efficient, or convenient.

58.     The individual Class members' ability to bring separate lawsuits on this subject matter claiming constitutional violations and other claims relief, particularly against a defendant of the resources available to Defendants, is limited to the point of being non-existent.

59.     The individual Plaintiffs' claims are typical of the claims of all Class members because the individual Plaintiffs and the other Class members have all been injured in the same manner, and as a result of the same tortious misconduct by Defendants. Plaintiffs and all Class members have the same or similar property and liberty interests, and the same or similar interest in vindicating those rights as asserted herein. Plaintiffs and all Class members have the same or similar rights under the U.S. Constitution as well as Art. 1 Sec. 19 of the Ohio Constitution and Chapter 163 of the Ohio Revised Code.

60.     Plaintiffs and all Class members have suffered similar harm, or will suffer similar harm in the future, arising from Defendants' acts and inaction in causing or allowing Plaintiffs'

and the Class members' personal injuries as well as their prolonged, unlawful, and harmful impairment of their fundamental constitutional rights.

61.     Common questions of law and fact exist as to all Class members that predominate over any questions solely affecting individual Class members. These common legal and factual questions include (without limitation):

a.  Whether Defendants' actions constitute an uncompensated and unconstitutional taking under the Fifth Amendment to the United States Constitution;

b.  The actions and inactions of the Defendants giving rise to the TDE and their unconstitutional taking;

c.  The duties of care owed by the Defendants;

d.  The range and scope of the TDE; and

e.  The stigmatization and diminution in fair market value of the real and personal property withing twenty (20) miles of the TDE.

62.     Separate actions by individual Class members would create a risk of inconsistent or varying adjudications regarding the same or similar issues.

63.     A class action is the best available method for adjudication of these legal issues because individual litigation of these claims would be impracticable and unduly burdensome on the courts. A class action provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

64.     The requested relief is capable of broad application across the entirety of the plaintiff classes.

65.     There is a continuing and substantial public interest in these matters, justifying declaratory, monetary, and other relief in favor of the Plaintiffs and the Class.

66.     This suit may be maintained as a class action pursuant to Rules 23 of the Federal Rules of Civil Procedure because Plaintiffs and other Class members of the Class were suffered

the same injuries as a result of the same misconduct of the Defendants, and all of the factors of numerosity, commonality, typicality, and adequacy are present, as described herein.

67.     The undersigned counsel are competent to serve as Class Counsel. Collectively, counsel have substantial experience in class action, mass tort, multidistrict and multi-forum litigation, including pharmaceutical and dental malpractice class and mdl action litigation, and in individual civil rights litigation. Undersigned counsel also has substantial experience as trial counsel in numerous state and federal eminent domain proceedings as well as in multiple actions in the Northern District of Ohio arising from the unconstitutional taking of property. Undersigned counsel have sufficient resources to prosecute and manage this Class action vigorously on behalf of the Class.

### FIRST CAUSE OF ACTION
42 U.S.C 1983-Violation of Constitutional Rights Under Color of Law-Unconstitutional Taking

68.     Plaintiffs hereby incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

69.     Pursuant to 42 U.S.C § 1983, Defendants, acting under color of law, have acted to deprive Plaintiffs of their fundamental rights under the Fifth Amendment to the United States Constitution.

70.     As set forth above, Defendants have broad eminent domain authority to take any land necessary for their railroad.

71.     Defendants, through their conduct, have deemed the Plaintiffs property to be of necessity for its railroad.

72.     Defendants have physically taken Plaintiffs property and deprived them of any beneficial use thereof. Moreover, the Plaintiffs properties have been permanently damaged and

stigmatized to such a degree by Defendants' conduct that payment of just compensation was required by the Constitution.

73.    Defendants failed to pay just compensation and failed to appropriate the Plaintiffs land in accordance with the requirements set forth in Chapter 163 of the Ohio Revised Code. Plaintiffs have suffered a deprivation of rights in relation to their properties within a twenty (20) miles radius of the TDE.

74.    As a direct and proximate result of the impairment of Plaintiffs' fundamental constitutional rights, Defendants are liable to Plaintiffs in an amount to be determined at trial, in excess of $75,000, as well as prejudgment interest from February 3, 2023, and their reasonable attorney's fees and costs.

75.    In addition, Defendants conduct showing a shocking disregard for the rights and safety of the Plaintiffs and constitutes actual malice. Accordingly, Plaintiffs are also entitled to an assessment of punitive damages against the Defendants in an amount sufficient to punish them and to deter such conduct in the future.

## SECOND CAUSE OF ACTION
### Negligence

76.    Plaintiffs hereby incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

77.    Defendants had a duty of care to the Plaintiffs to conduct railway operations in such a manner that would not cause injury or harm to the Plaintiffs.

78.    Defendants had a duty of care to operate the transportation of ultrahazardous materials in such a manner that would not cause injury or harm to the Plaintiffs.

79.    Defendants breached their duty of care to the Plaintiffs by conducting Train 32N operations in a negligent manner, causing train cars to derail and spill chemical materials.

17

Further, Defendants negligently released toxic chemicals into the community and surrounding areas of East Palestine, Ohio.

80.     As a direct and proximate result of Defendants negligence, Plaintiffs have been exposed to toxic chemicals which have created a significant increase in health risks, and have suffered severe emotional distress, and anxiety.

81.     As a direct and proximate result of Defendants negligence, Plaintiff's properties have been exposed to toxic chemicals, causing the land to be of less value. Plaintiffs are unable to use or enjoy their property. In addition, Plaintiffs were forced to evacuate their homes resulting in out-of-pocket expenses.

82.     Further, as a direct and proximate result of Defendants negligence, Plaintiffs have suffered loss of business income and loss of business goodwill as well as personal injuries, anxiety, and emotional distress.

83.     At all times herein, Defendants knew or should have known the potential dangers that could result in the failure to conduct railway operations with a conscious regard for the rights and safety of Plaintiffs and the public. Additionally, Defendants knew or should have known the abnormal dangers of transporting toxic chemicals through a populated area which could result in the exposure to hazardous materials. Such failure and malicious recklessness was a breach of duty resulting in substantial damages suffered by Plaintiffs.

84.     Accordingly, Plaintiffs are also entitled to an assessment of punitive damages against the Defendants in an amount sufficient to punish them and to deter such conduct in the future.

## THIRD CAUSE OF ACTION
Strict Liability

85.     Plaintiffs hereby incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

86.     Defendant's transportation of ultrahazardous chemicals in close proximity to a residential area constitutes as an abnormally dangerous activity. Defendants are strictly liable for all damages suffered as a result of their conscious decision to partake in such an abnormally dangerous activity.

87.     Defendants "controlled release" of vinyl chloride constitutes as an abnormally dangerous activity. Defendants are strictly liable for all damages suffered as a result of their conscious decision to partake in such an abnormally dangerous activity.

88.     Defendant acted in violation of federal, state and/or local laws and/or regulations by partaking in such an abnormally dangerous activity.

89.     But for the Defendant's engagement in the abnormally dangerous activity, Plaintiffs would not have suffered damages.

90.     As a direct and proximate result, Plaintiffs suffered real property damage, personal property damage, loss of use and enjoyment of property, reduction in property value, out-of-pocket expenses in evacuation efforts, loss of business income, loss of business goodwill, personal injuries, increased health risks, and severe emotional distress and anxiety.

91.     At all times herein, Defendant knew or should have known, upon reasonable anticipation, the dangers of transporting ultrahazardous chemicals in close proximity to a residential area.

92.     At all times herein, Defendant knew or should have known, upon reasonable anticipation, the health/environmental risks of intentionally releasing vinyl chloride outlined above.

## FOURTH CAUSE OF ACTION
Medical Monitoring

93.     Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

94.     The ultrahazardous materials that train 32N was transporting were highly toxic substances that, if exposed, have the potential to pose serious health and environmental concerns. See outlined herein paragraph 20(a) through (g).

95.     The toxins that Plaintiffs have been exposed to as a result of the TDE, including, but not limited to, vinyl chloride, butyl acrylate, ethylene glycol monobutyl ether, isobutylene, benzene, butyl acrylate, phosgene, and hydrogen chloride, have the potential to continue to cause serious health and environmental damages described in paragraphs 20(a) through 20(g).

96.     As a direct and proximate result of the exposure to toxic substances, Plaintiffs have an increased risk of long-lasting health concerns. This increased risk will warrant a reasonable physician to order monitoring.

97.     Medical monitoring will provide early detection and diagnosis of possible life-threatening health concerns. Such actions will help minimize the damages caused by Defendants.

## FIFTH CAUSE OF ACTION
Private Nuisance

98.     Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

99.    Each Plaintiff owns, rents, and/or otherwise occupies real property located in or around the surrounding areas affected by the TDE.

100.    Defendant wrongfully interfered with Plaintiffs' respective interests in relation to the use of their property. Defendant obstructed the comfortable use of Plaintiff's properties.

101.    Defendants contaminated Plaintiff's real property, causing for Plaintiffs to refrain from occupying or enjoying their property, and impaired their ability to use available water sources for needs such as drinking, cooking, and bathing.

102.    As a direct and proximate result of Defendant's creation of a nuisance, Plaintiffs suffered real property damage, personal property damage, loss of use and enjoyment of property, reduction in property value, out-of-pocket expenses in evacuation efforts, loss of business income, loss of business goodwill, personal injuries, increased health risks, and severe emotional distress and anxiety.

103.    At all times herein, Defendant knew or should have known that the toxic chemicals were hazardous and could/would cause severe harm and damage to people and property. Upon reasonable anticipation, the failure to handle railway operations in an appropriate manner would cause harm and damage to Plaintiffs and their property.

## SIXTH CAUSE OF ACTION
### Public Nuisance

104.    Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

105.    Defendants were the direct cause for emission of an air contaminate pursuant to Pursuant to OH Rev. C. § 3704.03.

106.    The federal Clean Air Act includes vinyl chloride in the list of hazardous air pollutants in which has an emission standard.

107.    Defendants intentionally administered the release of vinyl chloride, resulting in dioxins being dispersed into the air and surrounding properties.

108.    The TDE resulted in the contamination of, including but not limited to, personal property, drinking water resources, and the surrounding ecosystem which caused the widespread death of aquatic animals.

109.    As a direct and proximate result of Defendants creation of a nuisance, Plaintiffs suffered real property damage, personal property damage, loss of use and enjoyment of property, reduction in property value, out-of-pocket expenses in evacuation efforts, loss of business income, loss of business goodwill, personal injuries, increased health risks, and severe emotional distress and anxiety.

## SEVENTH CAUSE OF ACTION
Trespass

110.    Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

111.    Defendants were not authorized to damage property in and around East Palestine, Ohio, including Plaintiffs' properties. Defendant's engagement in transporting hazardous materials was the direct cause for the reckless destruction of private and public property.

112.    Defendants intentionally released ultrahazardous chemicals in and around East Palestine, Ohio, causing damage to Plaintiffs' properties.

113.    Defendant failed to appropriately obtain license or right to the property through use of its eminent domain power and, as such, entered Plaintiffs' properties---both physically and constructively---without legal basis.

114.    As a direct and proximate result of Defendants trespass, Plaintiffs suffered real property damage, personal property damage, loss of use and enjoyment of property, reduction in

property value, out-of-pocket expenses in evacuation efforts, loss of business income, loss of business goodwill, personal injury, increased health risks, and severe emotional distress and anxiety.

115. At all times herein, Defendant knew or should have known at minimum, and upon reasonable anticipation, the damage that could occur to people, animals, and real and personal property by the transportation, emission, and release of hazardous chemicals in and around a residential community.

## EIGHTH CAUSE OF ACTION
Willful and Wanton Conduct

116. Plaintiff hereby incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

117. Upon information and belief, Defendants were aware at all times of the ultrahazardous chemicals being transported, including, but not limited to, vinyl chloride, butyl acrylate, ethylene glycol monobutyl ether, isobutylene, benzene, butyl acrylate, phosgene, and hydrogen chloride, that are abnormally dangerous to people and the environment.

118. Upon information and belief, Defendants were aware at all times of the health and environmental risks associated with the release of toxic chemicals in and around the surrounding areas of the TDE.

119. As a direct and proximate result of Defendants willful, wanton, and reckless transportation, emission, and release of hazardous chemicals, residents in and around East Palestine, Ohio, including Plaintiffs, suffered real property damage, personal property damage, loss of use and enjoyment of property, reduction in property value, out-of-pocket expenses in evacuation efforts, loss of business income, loss of business goodwill, personal injury, increased health risks, and severe emotional distress and anxiety.

## NINTH CAUSE OF ACTION
Tortious Interference With Business

120.    Plaintiffs hereby incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

121.    Defendants, at minimum, knew or should have known upon reasonable anticipation the risks of transporting ultrahazardous materials through and near residential communities. Further, defendant knew or should have known of the existence of businesses in and near the residential community.

122.    Defendants conduct was so reckless as to be deemed intentional.

123.    Defendants reckless transportation, emission, and release of hazardous materials interfered with Plaintiffs ability to fully operate and maintain their business.

124.    As a direct and proximate result of Defendants tortious conduct, Plaintiffs suffered real property damage, personal property damage, loss of use and enjoyment of property, loss of business income, and loss of business goodwill.

## TENTH AND ELEVENTH CAUSES OF ACTION
Preliminary and Permanent Injunction

125.    Plaintiffs hereby incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

126.    Plaintiffs have been, and continue to be, adversely affected by the Defendants abuse of its eminent domain power and trampling of their constitutional property and due process rights. Given the ongoing nature of this misconduct, and the utter lack of any necessity for the proposed taking, the Defendant's conduct creates harms to the Plaintiff property owners for which no adequate legal remedy exists.

127.    Plaintiffs are entitled to an Order from this Court preliminarily and permanently enjoining the Defendant from engaging in any further efforts to appropriate the subject property as well as to prevent any future infringement upon Plaintiffs' full enjoyment of their legal property rights.

128.    Plaintiff property owners are further entitled to an award of their fees and costs expended in the prosecution of this action.

**WHEREFORE**, the Plaintiffs respectfully pray for judgment against Defendants, jointly and severally, as follows:

A.  Plaintiffs request the Court enter an order certifying the Class, as defined above, and appointing undersigned counsel as Class Counsel.

B.  Plaintiffs request a Class-wide judgment declaring that, by operation of the TDE described herein, Defendants have affected an uncompensated and unconstitutional taking of the Plaintiffs respective real and personal property

C.  Plaintiffs request a Class-wide judgment declaring that the date of take was February 3, 2023 and for an assessment of prejudgment interest from that date;

D.  Plaintiffs request injunctive relief against the Defendants preventing them from inflicting further irreparable injury upon the Plaintiffs and forcing the remediation of the property adversely affected by the TDE;

E.   Plaintiffs request judgment in their favor in an amount to be determined at trial, in excess of $75,000;

F.  Plaintiffs request an award of their reasonable attorney fees and costs incurred in the prosecution and maintenance of this action;

G.  Plaintiffs request an assessment of punitive and/or exemplary damages against the Defendants in an amount sufficient to punish the Defendant and to dissuade such conduct in the future;

H.  Plaintiffs request that the Court award all such and other further relief to which they may be entitled and/or which this Honorable Court deems equitable, proper, and just.

Dated:  March 9, 2023     Respectfully Submitted,

            **Barkan & Robon, Ltd.**

            By: /s/Zachary J. Murry
               Zachary J. Murry

            **The Charles E. Boyk Law Offices, LLC.**

            By: /s/Wesley D. Merillat
               Wesley D. Merillat

            *Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby demand a trial by jury for all issues so triable.

            Respectfully submitted,

            **Barkan & Robon, Ltd.**

            By: /s/Zachary J. Murry
               Zachary J. Murry

            *Attorney for Plaintiffs*